UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SCOTT LERNER and** | | |
| **TAYLOR LERNER,** | | |
| **husband and wife,** | : | |
| **1132 Park St. NE** | | |
| **Washington, D.C. 20002** | : | |
| | | |
| Plaintiffs, | : | |
| | | **Civil Action No.:** _____ |
| v. | : | |
| | | |
| **FIG & OLIVE DC LLC** | | |
| **d/b/a Fig & Olive** | : | |
| **133 W 19th St., Suite 300** | | |
| **New York, NY  10011** | : | |
| | | |
| **Serve:** | : | |
| **Corporation Service Company** | | |
| **1090 Vermont Ave., NW** | : | |
| **Washington, DC  20005** | | |
| | : | |
| Defendant. | : | |
| _____ | | |

**COMPLAINT**
**(Food Poisoning – Strict Liability, Negligence)**

Plaintiffs Scott and Taylor Lerner ("plaintiffs"), by and through their undersigned counsel of record, asserting claims against Defendant Fig & Olive DC LLC d/b/a Fig & Olive ("Fig & Olive")  on the grounds and in the amount set forth below:

**JURISDICTION AND VENUE**

1.      Jurisdiction in this Court is proper pursuant to 28 USC § 1332(a)(1) and (e) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between

citizens of different states, and because the defendant has certain minimum contacts with the District of Columbia.

2. Venue is proper pursuant to 28 USC § 1391(a)(2) as the negligent acts and/or omissions committed by Defendant occurred in the District of Columbia, and the cause of action arose in the District of Columbia.

## PARTIES

3. At all times relevant hereto, Plaintiffs Scott and Taylor Lerner were and are adult citizens and residents of the District of Columbia.

4. Upon information and belief, and at all relevant times herein, Defendant Fig & Olive is a corporation organized and existing under the laws of Delaware. Defendant develops and operates certain restaurants. At all times relevant to the allegations contained in this Complaint, Fig & Olive was registered to do business and did conduct business in the District of Columbia, including at 934 Palmer Alley, NW, Washington, D.C. 20001. Defendant manufactured and sold the food products that are the subject of this action at its restaurant location in the District of Columbia.

## GENERAL FACTUAL ALLEGATIONS

### The *Salmonella* Outbreak at Fig & Olive

5. On or about September 9, 2015, the District of Columbia Department of Health (DOH) was notified of a potential foodborne disease outbreak at defendant's Fig & Olive food establishment in Washington, D.C. On Thursday, September 10, the restaurant voluntarily closed for six days during DOH's investigation. Ultimately, the

outbreak at defendant's restaurant caused more than sixty people to become ill, including residents of five states in addition to the District of Columbia. Ten confirmed cases among District of Columbia and Virginia residents have been identified. An additional 150 possible cases are being investigated.

6. "Over the past six days we have been working very closely with the Department of Forensic Science and persons who ate at the restaurant who may have been impacted by this outbreak to ensure a comprehensive assessment and solution that will sustain the safety of those living, working and visiting our nation's capital," said Dr. LaQuandra Nesbitt, Director of DOH. "Fig and Olive has been very cooperative, responsive and transparent throughout this process and has complied with the directive issued from the department."

7. Fig & Olive met the following requirements, which allowed their operations to be restored by DOH:

- Provided evidence/invoices of the clean-up and sanitization of the kitchen/premises;
- Verified employee health training, which included signed forms;
- Destroyed current food inventory;
- Corrected all violations cited in recent inspections;
- Provided a Standard Operating Procedure for food handling and preparation; and
- Implemented training program to reinforce good retail practices.

8. Through follow-up inspections, DOH has been able to confirm that Fig & Olive has removed all conditions that may have contributed to the *salmonella* outbreak.

3

DOH has increased surveillance of the establishment to ensure compliance with food safety regulations and to ultimately protect the health of the city's residents, workers, and visitors.

*Salmonella*

9. The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans. The taxonomy and nomenclature of *Salmonella* have changed over the years and are still evolving. Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

10. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

**Medical Complications of *Salmonellosis***

11. The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized a site distant from the affected joints. The predominant site of the infection is the gastrointestinal tract. Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

12. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary infections. The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria. In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination). *Id*. This triad of symptoms is called Reiter's Syndrome. The most common gastrointestinal bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*. Although a triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, not all three symptoms occur in all affected individuals.

13. *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain. In one recent study, over one-third of IBS sufferers had lived with IBS for more than ten years, with their symptoms remaining fairly constant over time. IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

**Scott and Taylor Lerner's Illnesses**

14. On Friday, September 4, 2015, the start of Labor Day weekend, Scott and Taylor dined together at the defendant's restaurant in Washington, D.C. They shared both tuna and mushroom croquettes.

15. The next day, Taylor began to experience stomach cramping and diarrhea. As the day progressed her symptoms worsened. Her diarrhea became painfully explosive and uncontrollable and her body became weak and fatigued. She went to sleep that night hoping that she would find relief by morning.

16. When Scott and Taylor woke up Sunday morning, Taylor's symptoms continued to plague her, and Scott began to experience nausea, stomach cramping, diarrhea, muscle aches, and fatigue as well. Scott and Taylor's stomach pain and diarrhea was like nothing that either of them had previously experienced.

17. Soon after Scott and Taylor began experiencing their symptoms, they learned of the Fig and Olive *Salmonella* outbreak. News of the outbreak caused them both amplified emotional distress. Taylor had just completed what would be her third and final intrauterine insemination treatment, and *Salmonella* exposure to a fetus can be devastating. For weeks, Scott and Taylor waited and wondered whether their chances for pregnancy had been wrecked.

18. Scott's physical symptoms eventually worsened to the point where he could bear it no longer. After days of frequent and bloody diarrhea, Scott sought medical attention.

19. Ultimately, Scott and Taylor experienced symptoms for weeks following their meal at the defendant's restaurant. After it was explained to Scott that there was very little that could be done, Taylor forwent medical treatment, choosing instead to take over-the-counter medicines.

20. Scott missed several days of work in early September, but ultimately had to return before he felt like he was physically ready. Taylor endured severe stomach pain and diarrhea until her symptoms dissipated in mid-to-late September.

## COUNT I
### (Strict Liability)

21. The defendant was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

22. The adulterated food product that the defendant manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

23. The adulterated food product that the defendant manufactured, distributed, and/or sold was delivered to the plaintiffs without any change in its defective condition. The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiffs.

24. The defendant owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, which was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other

substances injurious to human health. The defendant breached this duty.

25. The defendant owned a duty of care to the plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached this duty.

26. The plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, distributed, and/or sold.

### COUNT II
### (Negligence)

27. The defendant owed to the plaintiffs a duty to use reasonable care in the manufacture, distribution, and sale of its food product, the breach of which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant breached this duty.

28. The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

29. The defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws,

regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so, and was therefore negligent.

30.     The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so, and was therefore negligent.

31.     As a direct and proximate result of the defendant's acts of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

32.     The plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount that shall be fully proven at the time of trial.  These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; lost wages, both past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for judgment against defendant as follows:

A.      Ordering compensation for all general, special, incidental, and

consequential damages suffered by the plaintiffs as a result of the defendant's conduct in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) per plaintiff;

      B.     Ordering statutory prejudgment interest;

      C.     Awarding plaintiffs reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

      D.     Granting all such additional and/or further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

REGAN ZAMBRI LONG, PLLC

By: /s/ Salvatore J. Zambri

Salvatore J. Zambri   #439016
szambri@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C. 20036
Telephone: 202.822.1899
*Co-Counsel for Plaintiff*

MARLER CLARK, LLP, PS

By: /s/ William D. Marler
William D. Marler, Esq.
(Admission *pro hac vice* pending)

bmarler@marlerclark.com
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: 206-346-1888
*Co-Counsel for Plaintiff*

11